IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK SCHMIDT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-1535 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| PENNSYLVANIA TURNPIKE COMMISSION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 21) will be granted.

### BACKGROUND

Plaintiff brings this lawsuit against Defendant, his former employer, alleging disability discrimination under the ADA and PHRA. Plaintiff began working for Defendant in June 1995. *See* Def.'s Stmt. of Facts (Doc. 24) at ¶ 1.[1] At all relevant times, Plaintiff's employment was governed by a collective bargaining agreement ("CBA") between his union and Defendant. *Id.* at ¶ 3. The CBA contained provisions addressing employees' absences from work, which included the taking of paid "Sick and Accident" leave (hereinafter, "paid leave" or "S&A") and unpaid personal leave. *See id.* at ¶¶ 5-6. Defendant's written work policies

---

[1] Unless otherwise noted, Defendant's Statements of Fact are relied upon only to the extent that they are not materially disputed.

established procedures for an employee's requesting unpaid leave, and Plaintiff was aware of those policies. *See id.* at ¶¶ 7-8.

In February 1999, Plaintiff entered a rehabilitation program to address his problems with alcohol dependency. *See id.* at ¶ 11. Plaintiff applied for paid leave, which was approved, but his attempted rehabilitation was unsuccessful. *See id.* at ¶¶ 11-12.

Between the years 2002 and 2003, Plaintiff participated in no fewer than five rehabilitation programs, and in each instance, he was granted paid leave for his absence. *See id.* at ¶¶ 13-22. Plaintiff did not consider any of the rehabilitation programs to have been successful. *Id.* at ¶ 27.

In April through June of 2008, Plaintiff again was granted paid leave to attend a rehabilitation program to address his ongoing struggle with alcohol and drugs. *See id.* ¶¶ 23-24. Like the ones before it, Plaintiff's attempted rehabilitation failed. *See id.* at ¶ 25.

By January 2009, Plaintiff again was using drugs and alcohol. *Id.* at ¶ 29. Plaintiff decided to return to rehab, but before doing so, he went on a three-day drinking binge. *See id.* at ¶¶ 30-31. Around the same time, disputes arose between Defendant and Plaintiff regarding his poor work attendance, and a grievance hearing was held on February 19, 2009. *See id.* at ¶¶ 32-33. In attendance were Plaintiff, his union representatives and representatives of Defendant. *See id.* at ¶ 34.

Carol Tobias, an administrative secretary in Defendant's labor relations department, took detailed notes during the hearing. *See id.* at ¶ 35.[2] The notes reveal that much of the hearing was spent discussing Plaintiff's recent work absences, his explanations regarding them,

---

[2] Although Plaintiff asserts that Ms. Tobias's notes do not reflect everything that was said before, during and after the hearing, the notes are thorough and even-handed, and the Court will consider them for background purposes. Importantly, none of the differences Plaintiff may have regarding the contents of the notes are material for the purposes of the Court's analyses.

2

and Defendant's responses to the same. *See* hearing notes (filed under Doc. 23-6) at pgs. 2 of 17 through 5 of 17. Conspicuously absent from the discussions were references to Plaintiff's longstanding struggles with alcohol and drug dependency. *See id.* Just before the close of the hearing, however, was the following exchange:

| | |
|---|---|
| Plaintiff: | When I called off [of work], I talked to Ross [Scumaci, Plaintiff's supervisor,] who then told me I was off the schedule. |
| Mr. Scumaci: | [Plaintiff] never asked for me. |
| Plaintiff: | You called back within a minute. You took me off the schedule in two minutes. |
| Union rep. Chuck Gaston: | Did you and [Plaintiff's other supervisor] Howard [Laur] have a conversation about S&A? |
| Plaintiff: | I called Howard [Laur] . . . and told him I was on S&A. Howard said good luck. |
| Mr. Laur: | You didn't say anything about S&A. |
| Mr. Scumaci: | I didn't know about the request for S&A. |
| Plaintiff: | I called off three days in a row because I was going into rehab. |
| Mr. Laur: | I didn't say okay. |

Hearing notes at pg. 6 of 17.

As a result of the grievance proceedings, Defendant agreed to reinstate Plaintiff in exchange for his signing a last chance agreement ("LCA"). *See* Def.'s Facts at ¶ 36. The LCA stated that Plaintiff had accumulated absent-without-leave ("AWOL") hours in excess of the amount permitted under the CBA, thereby warranting his automatic termination. *See* LCA (filed under Doc. 23-10) at pg. 10 of 15. The agreement stated, however, that Defendant would convert Plaintiff's termination into a suspension, subject to certain conditions.

*See id.* at pg. 11 of 15.  Among those conditions was the requirement that, "within 48 hours of signing" the LCA, Plaintiff would contact his employer "to be placed back on the work schedule."  *Id.*  The agreement concluded by stating:  "[t]his settlement is not intended to modify any provision of the current [CBA] . . . ."  *Id.*

Nowhere in the LCA did the parties discuss Plaintiff's ongoing problems with alcohol dependency, nor did the agreement directly address Plaintiff's taking of paid or unpaid leave.[3]  In any event, Plaintiff signed the LCA without objection.  *See* Pl.'s Resp. (Doc. 26) to Def.'s Facts at ¶ 42 (admitting that, although Plaintiff "had the opportunity to dispute any[ contents of] the LCA," he did not do so before signing).  Prior to signing the LCA, Plaintiff had been notified by the parties' S&A carrier, Hartford, that his request for paid leave had been denied.  *See* Ltr. from Hartford dated Mar. 2, 2009 (filed under Doc. 23-28); *see also* Pl.'s Resp. to Def.'s Facts at ¶ 40 (admitting that, when Plaintiff signed LCA, he already was aware that Hartford had denied his application for S&A).

Consistent with the terms of the LCA, Plaintiff called Defendant's manager, Gary Kwolek, on March 18, 2009.  *See* Def.'s Facts at ¶ 50.  Although the LCA contemplated Plaintiff calling Mr. Kwolek to be "placed back on the work schedule," Plaintiff claims that "[t]he only purpose of the phone call was for [him] to inform [Mr.] Kwolek of his current status," namely that he was participating in a rehabilitation program, that his S&A application had been denied, and that Plaintiff had no intention of reporting for work until he completed the rehabilitation program in July or August 2009.  *See* Pl.'s Resp. to Def.'s Facts at ¶¶ 53-54;

---

[3] Only one provision of the LCA mentioned, in passing, the issue of leave:  "This letter is a final warning and is equivalent to a suspension that will remain in effect for a period of one (1) year from [Plaintiff's] physical return to work[; a]ny time away from work related to S&A, FMLA or approved, unpaid personal leave will not count toward satisfying the (1) year probationary period."  *See id.*

4

*see also id.* at ¶ 57 (claiming that, although Plaintiff never specifically requested unpaid personal leave, he conveyed to Defendant that he would remain in rehabilitation, and out of work, irrespective of whether paid leave was granted).

Mr. Kwolek, in a memorandum to Defendant's manager Richard DiPiero dated April 2, 2009, stated:

> I received a phone call from [Plaintiff] on 3/18/09 . . . concerning his response within 48 hours to his [LCA] as to returning to work.
>
> [Plaintiff] indicated that he was currently in [r]ehab and is following up on obtaining S[&]A leave status.
>
> However, as of 4/1/09, I have received no notice that any official leave has been approved.  Therefore, 4/1/09 will be charged as AWOL, bringing his total [over the permissible amount under the CBA, thereby] automatically terminat[ing Plaintiff's] employment . . . .
>
> Please review and advise.

*See* Doc. 23-6 at pg. 11 of 17.

On April 6, 2009, Mr. DiPiero wrote to Defendant's director of human resources, Patricia Schlegel, as follows:

> I concur with . . . [Mr.] Kwolek [regarding] the termination . . . .
>
> [Plaintiff] failed to advise his District Manager of official leave status, after telephoning Mr. Kwolek within 48 hours on 3/18/09[, per] his last chance letter.  At the time of his first telephone call[,] he advised that he was currently in rehab and was following up on obtaining [S&A] leave.  As of 4/1/09, Mr. Kwolek had not received any official notice that leave had been approved.
>
> As a result, [Plaintiff] has violated [the CBA by] accumulating [more] AWOL time [than is permitted under the agreement].  This is cause for immediate termination from his position . . . .

*See* Doc. 23-6 at pg. 12 of 17.

Plaintiff was notified of Defendant's decision by way of a letter from Ms. Schlegel dated April 7, 2009:

> This is to advise you that your services . . . with [Defendant] were terminated at the close of business on April 6, 2009.
>
> The reason for this termination is [your] exceeding [the number of] workdays of unauthorized leave[, in] violation . . . of the [CBA] while on a [l]ast [c]hance letter. After signing your return to work letter on March 16, 2009[,] you failed to return to work nor did you apply for any type of approved leave.

*See* Doc. 23-6 at pg. 13 of 17.

On May 13, 2009, Hartford denied Plaintiff's appeal of the decision denying S&A leave,[4] and, in a letter dated July 16, 2009, Plaintiff's union representative rejected his request for further union intervention:

> On February 19, 2009, a grievance hearing was held . . . regarding your termination. [The union] was successful in our efforts to have you reinstated at that time. A last chance agreement was negotiated and . . . delivered . . . for your signature . . . .
>
> At the time of the hearing, you informed [us] that you had applied for and were approved for [S&A] benefits. Later on[,] this office was informed by [Defendant] that your [S&A] claim was denied. [We] informed you that your best course of action at that time would be to return to work and re-apply for [S&A] benefits. . . .
>
> You told [us] that you were not returning to work and that you were staying [in rehab], . . . [and] that none of this was any of our business.
>
> Sometime later[,] you informed [us] in a phone conversation that your [S&A] claim [would be] under appeal until sometime in August 2009. At that time, you still had not . . . taken . . . necessary steps . . . to comply with the guideline[s] set by . . . Hartford . . . .
>
> We once again told you what needed to be done in order for [us] to have you reinstated. [We] also informed you at that time that it may already be too late, but if you did what was needed to be done, [we] would make every effort to [have] you reinstated again.

---

[4] *See* Ltr. from Hartford dated May 13, 2009 (filed under Doc. 23-28).

6

> Once again you did nothing.  In [our] last conversation[,] you asked . . . what [we were] doing to get your job back.  [We] asked you if you had done anything that we instructed you to do, [and] you responded that you were granted unemployment compensation and that was proof that you complied with . . . Hartford['s] . . . guidelines.  Again, you stated that you had done everything you felt you had to do.
>
> [We] informed you that unemployment had nothing to do with [S&A benefits] and if you had indeed done everything you were required to do you would be receiving [S&A] benefits and not unemployment compensation.
>
> After that conversation[, we] made a call to see what was happening with your [S&A] appeal[, and we] learned that your appeal was denied on May 13, 2009.
>
> This office was successful in having you reinstated on your original termination despite a preponderance of evidence presented by [Defendant].  We were prepared to give another vigorous defense.
>
> However, since you have done absolutely nothing on your own behalf, the Executive Board has unanimously voted not to move this grievance to arbitration[,] and [we] consider this matter closed.

*See* Union's Ltr. dated Jul. 16, 2009 (filed under Doc. 23-20).

Although Plaintiff denies that he initially, and erroneously, told his union that S&A leave had been approved, he admits that, once the union learned that paid leave had been denied, it advised him to return to work or his absence would not be excused under the CBA.  *See* Pl.'s Resp. to Def.'s Facts at ¶ 80.

## ANALYSIS

Because the adverse employment action in question occurred after January 1, 2009, Plaintiff's claims are governed by the standards adopted in the ADA Amendments Act of 2008 (the "ADAAA").  *See* Sechler v. Modular Space Corp., 2012 WL 1355586, *9 (S.D. Tex. Apr. 18, 2012) (holding same).  Although Defendant argues that Plaintiff has failed to establish

substantial limitation in a major life activity,[5] the Court declines to reach these arguments for the purposes of summary judgment. *Compare* Pl.'s Opp'n Br. (Doc. 25) at 11-14 (quoting Plaintiff's and his girlfriend's testimony regarding limitations in his life activities) *with* Sechler at *11 (finding similar testimony sufficient to present issues of material fact under ADAAA).

Notably, however, the ADAAA did not materially alter those provisions recognizing that drug and alcohol-related disability claims are "treat[ed] differently from other disabilities by ensuring that employers do not have to go through the [same] accommodation process." *See* Veltri v. Thompson Consumer Elec., Local No. 178, 2004 WL 1490522, *5 (M.D. Pa. May 18, 2004) (interpreting 42 U.S.C. § 12114(c)) (citation to Third Circuit authority omitted). Both pre- and post-amendment, "employers may have the same qualification standards [of] employment" for all workers, "even if any unsatisfactory performance or behavior is related to . . . drug [or alcohol] use." *Id.* (citations and internal quotations omitted); *see also* post-ADAAA provisions in 42 U.S.C. § 12114(c)(4) (containing same language). Thus, the Court finds that pre-amendment case law regarding drugs, alcohol and the ADA, as cited below, remains salient.

Given that Plaintiff was not entitled to performance-related accommodations based on his alcohol dependency, his counsel focuses on the proposed accommodation of Defendant granting Plaintiff unpaid leave to attend rehab. In essence, Plaintiff's case boils down to a single theory: although he never specifically requested unpaid leave, Plaintiff conveyed to Defendant that he intended to complete his rehabilitation program regardless of whether or not he was paid. *See, e.g.*, Pl.'s Resp. to Def.'s Facts at ¶ 52; *see also id.* (Defendant "knew that[,] between [not] receiving pay and staying in the rehabilitation program, Plaintiff chose to stay in rehab[]"). In light of this purported knowledge, and despite Defendant's lack of knowledge regarding

---

[5] *See* Def.'s Br. (Doc. 22) at 6-7.

whether Plaintiff's request for paid leave had been (or would be) denied, Plaintiff would impose upon Defendant the burden of identifying and approving an alternative "accommodation," namely unpaid leave, before terminating him based on his refusal to appear for work as contemplated in the LCA. This, in the Court's view, proves too much.

At the onset, the Court has serious doubts as to whether Plaintiff did, in fact, provide sufficient notice to Defendant regarding his purported request for accommodation. While notice under the ADA does not focus on "magic words" or other formalisms, the employee bears the burden of showing that he "provide[d] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *See* Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999) (emphasis added). Reading the evidence in a light most favorable to Plaintiff, the most that reasonably can be said is that Plaintiff was hoping to receive S&A benefits, and that Defendant was aware he was seeking them. Plaintiff's request for accommodation, to the extent one existed, was wholly contingent upon a denial of his request for paid leave, and the Court is not convinced that a jury reasonably could conclude that Defendant was afforded adequate notice under the circumstances.

Even assuming Plaintiff provided sufficient notice, the interactive process imposes on "both parties . . . a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Taylor at 312. Just as "[a] party that obstructs or delays the interactive process is not acting in good faith," the same is true of "[a] party that fails to communicate, by way of initiation or response." *Id.* (citation to quoted source omitted, emphasis added). As the Court of Appeals for the Third Circuit has explained:

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. . . . In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Id.*

Under the circumstances presented, Plaintiff has failed to demonstrate how a jury reasonably could conclude that any breakdown in the interactive process came at the hands of Defendant. As a result of his union's successful negotiations, Plaintiff was offered and accepted a last chance agreement contemplating his "being placed back on the work schedule" within 48 hours of signing the agreement. *See* discussion *supra*. Plaintiff admits that his application for paid leave was denied prior to his signing the LCA; he admits to having signed the LCA without objection; and he admits that his union specifically advised him that his failure to return to work would be in violation of the CBA. *See* discussion *supra*. To the extent that the interactive process broke down, it resulted from Plaintiff's failures of communication, not through the conduct of omissions of Defendant.

Plaintiff attempts to avoid this conclusion by stating that, under his interpretation of the LCA, he would not be returning to work until he completed his rehabilitation program. *See, e.g.*, Pl.'s Resp. to Def.'s Facts at ¶ 64. Although Plaintiff is entitled to have his own interpretation of the LCA, this does not mean that his interpretation is a reasonable one.[6]

---

[6] Plaintiff claims to have interpreted "being placed back on the work schedule" to mean that he "would be listed as an employee again after the grievance hearing, but that he was not required to quit the rehabilitation program and to physically return to work immediately." *See id.* at ¶ 48. He offers no convincing basis, in logic or fact, for such a broad interpretation of the concept of a "work schedule." Plaintiff also points to the LCA provision explaining that his one-year suspension ran from his "physical return to work," not including "[a]ny time away from work related to S&A, FMLA or approved, unpaid personal leave." *Compare* LCA at ¶ 4 *with*

Plaintiff's reading of the LCA was not reasonable, and his breach of the agreement provides an independent basis for granting summary judgment in Defendant's favor. *See, e.g.*, Nicholson v. West Penn Allegheny Health System, 2007 WL 3120275, *10-11 (W.D. Pa. Oct. 23, 2007) (breach of LCA constituted legitimate, non-discriminatory reason for adverse employment decision, entitling defendant to summary judgment; "[n]umerous courts have upheld the validity of [LCAs] under the ADA," LCAs "must be strictly construed," and, "[i]n fairness to . . . employer[s] and other alcoholics who will need [LCAs]," courts should "not discourage their use by making their terms meaningless").

In light of the foregoing, the Court believes and therefore holds that a jury could not reasonably conclude that Plaintiff requested an accommodation and that Defendant, rather than Plaintiff, was responsible for any breakdown in the interactive process. The Court also determines, as an independent and alternative basis for summary judgment, that Plaintiff's failure to receive his "ideal" choice of accommodation, in this case unpaid leave, does not establish the unreasonableness of the accommodation available to him. *See, e.g.*, Mastronicola v. Principi, 2006 WL 3098763, *5 (W.D. Pa. Oct. 30, 2006) (holding same).

Finally, the Court believes that its rulings above can, and should, be informed by the jurisprudence recognizing the untenable position presented by an employee who remains dependent on alcohol or drugs after repeated, unsuccessful rehabilitation attempts. *See* discussion *supra* (summarizing Plaintiff's seven prior, unsuccessful attempts at rehabilitation, including participation in program only seven months prior to alcohol use leading

---

Pl.'s Opp'n Br. (Doc. 25) at 20. By its own terms, this provision merely indicated that any approved absences from work would not count toward Plaintiff's one-year suspension period, not that Plaintiff was excused from being placed on the work schedule within 48 hours of signing. Based on all the facts and circumstances presented, only one reasonable conclusion can be reached, namely, that Plaintiff knew or should have known that Defendant expected him to timely return to work.

to his termination). Although providing an employee with an opportunity to rehabilitate himself is consonant with both the law and the greater public good, there comes a point where demanding an employer to offer multiple, if not unlimited, opportunities for recovery veers outside the realm of reasonableness. *See, e.g.*, Corbett v. National Prods. Co., 1995 WL 133614, *4 (E.D. Pa. Mar. 27, 1995) (noting unreasonableness of requiring "[a]n employer . . . to permit several leaves of absence for an alcoholic worker for whom . . . successful treatment" has proven unsustainable); Schmidt v. Safeway Inc., 864 F. Supp. 991, 997 (D. Or. 1994) (noting same, because "the fact that an accommodation has been attempted and was unsuccessful may prove dispositive in determining whether failure to permit subsequent leave constituted failure to make a reasonable accommodation") (citation omitted).

Although Plaintiff may be commended for his persistence in attempting to overcome his dependency on alcohol and drugs, Defendant's numerous, prior grants of accommodation rendered his request for leave, whether paid nor not, unreasonable.[7]

For all of the reasons stated above, Defendant is entitled to summary judgment on Plaintiff's claims,[8] and the Court hereby enters the following:

---

[7] Plaintiff reports that, as of the completion of his last rehabilitation program to the present, he has remained sober. *See* Pl.'s Opp'n Br. at 16. While this undoubtedly is encouraging news, it has no bearing on the reasonableness of his purported request for accommodation in 2009. *See* Green v. Pace Suburban Bus, 2004 WL 1574246, *16 (N.D. Ill. Jul. 12, 2004) (ADA accommodation is evaluated at time of adverse employment decision, not "with the benefit of hindsight").

[8] The Court's ADA analyses apply with equal force to Plaintiff's PHRA claims. *See* Taylor, 184 F.3d at 306 (holding same).

## II.  ORDER

Defendant's Motion for Summary Judgment (**Doc. 21**) is **GRANTED**.


September 25, 2012                             s\Cathy Bissoon
                                               Cathy Bissoon
                                               United States District Judge

cc (via ECF email notification):

All Counsel of Record